UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PETERSEN-DEAN, INC., <br><br> Defendant. | Case No. 13-cv-05758-DMR <br><br> **ORDER ON PLAINTIFF'S MOTION TO VACATE DISMISSAL ORDER AND ENFORCE SETTLEMENT AGREEMENT** <br><br> Re: Dkt. No. 162 |

The court dismissed this case on November 2, 2016 after the parties reached a settlement. [Docket No. 161.] Plaintiff Zurich American Insurance Company ("Zurich") now moves pursuant to Federal Rule of Civil Procedure 60(b)(6) to vacate the dismissal order and to enforce its settlement agreement with Defendant Petersen-Dean, Inc. ("Petersen-Dean"). [Docket No. 162.] The court held a hearing on June 29, 2017. For the following reasons, Zurich's motion is granted.

**I.   BACKGROUND**

Petersen-Dean is a roofing and solar power installation company. Zurich provided insurance to Petersen-Dean for seven policy years spanning two periods: (1) May 1, 2003 through May 1, 2008 and (2) April 30, 2011 through April 30, 2013. [Docket No. 57 (2d. Am. Compl.) ¶¶ 12, 13.] The insurance included workers compensation, general liability, completed operations liability and/or automobile liability insurance, and covered Petersen-Dean's employees and operations in five states. *Id*. at ¶ 13.

Zurich issued insurance policies to Petersen-Dean for each of the seven policy years. Additionally, the parties entered into related program agreements setting forth payment and other terms agreed upon by the parties. *Id*. at ¶¶ 14, 15. According to Zurich, in late 2012, Petersen-Dean stopped paying the invoices issued by Zurich, resulting in defaults as defined by the parties'

insurance contracts. *Id*. at ¶¶ 24, 25, 28, 29. Zurich filed the present lawsuit on December 11, 2013. [Docket No. 1.]

On February 24, 2015, during the pendency of the lawsuit, the parties entered into a Payment and Standstill Agreement (the "Collateral Agreement"). [*See* Docket No. 107-1 (Gursky Decl., Apr. 6, 2016) Ex. A (Collateral Agreement).] Pursuant to the Collateral Agreement, Petersen-Dean agreed to post $1.35 million of collateral through nine separate installments in order to secure amounts owed under the terms of the parties' insurance contracts. Collateral Agreement ¶ 8. After posting the first eight collateral payments, Petersen-Dean failed to post the ninth payment of $175,000. Zurich moved to enforce the Collateral Agreement, seeking an order requiring Petersen-Dean to immediately pay the outstanding $175,000 collateral payment. [Docket No. 107 (Petition to Enforce Payment and Standstill Agreement).] The court granted the motion on May 16, 2016 and ordered Petersen-Dean to post $175,000 pursuant to the terms of the Collateral Agreement. [Docket No. 122.]

In November 2016, following a court-ordered settlement conference before the Honorable Jacqueline Scott Corley, the parties executed a written settlement agreement. [Docket Nos. 160 (Settlement Conference Minute Order), 162-1 (Gursky Decl., Apr. 21, 2017, "Gursky Decl. II") Ex. 1 (Settlement Agreement).] Pursuant to the Settlement Agreement, Petersen-Dean agreed to pay Zurich a total of $1.8 million in 22 separate and unequal installments, starting on December 1, 2016 and ending on September 1, 2018. Settlement Agreement ¶ 2, Ex. B. The Settlement Agreement contains the following provisions governing default:

> **3. Notice Of Default:** In the event that Petersen-Dean fails to timely make any payment set forth in Exhibit B by the close of business on the fifth day of any month, then Zurich may provide Petersen-Dean with notice in writing of its intent to hold Petersen- Dean in default (the "**Notice**"). The Notice shall be sent by email to all of the following email addresses:
>
> jpetersen@petersendean.com
> gmilionis@petersendean.com
> kfusch@petersendean.com
>
> If Petersen-Dean does not make payment to Zurich within five (5) calendar days after Zurich provides the Notice, then Petersen-Dean shall be deemed in default of this Agreement (the "**Default**").

> **4. Default:** In the event of a Default, Zurich shall be entitled to a judgment from the United States District Court for the Northern District of California in an amount calculated as $1.8 million *minus* any amounts paid under this Agreement.

Settlement Agreement at ¶¶ 3-4 (emphasis in original). In addition, the Settlement Agreement provides that this court shall retain jurisdiction to enforce its terms and to enter judgment against Petersen-Dean upon a default:

> **7. Court's Retention Of Jurisdiction:** The United States District Court for the Northern District of California shall retain jurisdiction over the Parties in order to (a) enforce the terms of this Agreement, (b) resolve any disputes relating to or arising under this Agreement, and/or (c) enter and enforce any judgment pursuant to Paragraph 4 of this Agreement.

*Id*. at ¶ 7.

In light of the settlement, on November 2, 2017, the court issued an Order of Dismissal and closed the case. [Docket No. 161.]

Petersen-Dean made the first four monthly installments to Zurich under the Settlement Agreement, paying a total of $400,000 in December 2016, January 2017, February 2017, and March 2017. Gursky Decl. II ¶ 4. However, it failed to pay the $100,000 due for the April 1, 2017 installment. *Id*. at ¶ 5. Accordingly, on April 7, 2017, pursuant to paragraph 3 of the Settlement Agreement, Zurich served Petersen-Dean with a Notice of Default. *Id*. at ¶ 5, Ex. 2. Petersen-Dean has not cured the default. Gursky Decl. II ¶ 6.

Zurich now asks the court to reopen the case pursuant to Rule 60(b)(6) and to enter judgment in its favor in the amount of $1.4 million, calculated pursuant to ¶ 4 of the Settlement Agreement as $1.8 million minus $400,000 in payments made to date.

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 60(b)(6) provides that a court "may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief." "Generally, only 'extraordinary circumstances' justify relief under the rule." *Keeling v. Sheet Metal Workers Int'l Ass'n, Local Union 162*, 937 F.2d 408, 410 (9th Cir. 1991) (citations omitted). "Repudiation of a settlement agreement that terminated litigation pending before a court constitutes an extraordinary circumstance, and it justifies vacating the court's prior dismissal

1  order." *Id*. Further, "in the usual litigation context . . . courts have inherent power summarily to
2  enforce a settlement agreement with respect to an action pending before it; the actual merits of the
3  controversy become inconsequential." *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978).

## III. DISCUSSION

The Settlement Agreement unambiguously provides that judgment in the amount of $1.8 million minus any amounts paid under the agreement shall be entered in Zurich's favor if Petersen-Dean fails to make payment and fails to cure its default within five days after notice. It also clearly provides that this court retains jurisdiction to enforce the terms of the Settlement Agreement and to enter and enforce any judgment entered in the event of Petersen-Dean's default. Settlement Agreement ¶¶ 3, 4, 7. Here, Petersen-Dean undisputedly missed the April 1, 2017 installment payment required under the Settlement Agreement and failed to cure the default. The requested judgment of $1.4 million is therefore warranted. *See, e.g., Geller v. Bowers*, No. CV 11-00874 PSG, 2012 WL 1895961, at *2 (N.D. Cal. Apr. 13, 2012) *report and recommendation adopted*, 2012 WL 1895958 (recommending entry of judgment against party that failed to make required payments under settlement agreement); *Burns v. Romero General Construction*, No. 13-cv-05647-JSC, 2015 WL 4498197, at *3 (N.D. Cal. July 23, 2015) (same, collecting cases).

Although Petersen-Dean does not dispute that it failed to make the payment due on April 1, 2017, it argues that that the court should nevertheless deny the relief requested by Zurich for several reasons. To begin with, Petersen-Dean asserts that the court lacks jurisdiction to decide the motion because Zurich has not established the existence of "extraordinary circumstances" as required under Rule 60(b)(6). It argues that "settlement agreements do not and cannot confer continuing jurisdiction on the Court." Opp'n at ECF pp. 9-10. To the contrary, under controlling Ninth Circuit authority, "[r]epudiation of a settlement agreement that terminated litigation pending before a court constitutes an extraordinary circumstance" that justifies vacating a dismissal order under Rule 60(b)(6). *Keeling*, 937 F.2d at 410. Moreover, "courts have inherent power summarily to enforce a settlement agreement with respect to an action pending before it." *Dacanay*, 573 F.2d at 1078. Defendant does not address or distinguish this authority. The court finds that it has the authority to reopen the case and enter judgment against Petersen-Dean under

4

the circumstances presented here.

Petersen-Dean next contends that Zurich is not entitled to entry of judgment because it should have used the collateral funds "to pay any further Zurich invoices as had been done in the past," and that Zurich has abused its discretion by electing not to do so. Opp'n at ECF pp. 4, 11. In making this argument, Petersen-Dean apparently invokes paragraph 5 of the Settlement Agreement:

> **5. Collateral:** The $803,750.87 currently held in the Collateral Trust account (the 'Collateral') will be held by Zurich as collateral for Petersen-Dean's obligations under the Insurance Program. The Collateral will not be used to pay future billings, as those billings will be paid by Petersen-Dean in the ordinary course. But Zurich may apply the Collateral to future billings at Zurich's discretion if Petersen-Dean fails to pay such future billings.

Settlement Agreement ¶ 5.

This argument lacks merit. As set forth above, the Settlement Agreement contains unambiguous terms that govern default for failure to make timely settlement payments. Petersen-Dean cannot escape the consequence of those provisions by invoking an unrelated term that addresses payment of future billings, not settlement payments. In any event, it is difficult to understand how Paragraph 5 advances Petersen-Dean's position, as it unambiguously states that the collateral funds will *not* be used to pay future billings, and that Zurich has the *discretion* to apply the collateral to future billings if Petersen-Dean fails to pay those future billings.

Petersen-Dean makes a further argument related to the collateral funds by asserting that the Settlement Agreement should be reformed due to "mistake." Opp'n at ECF p. 12. It cites California Civil Code section 3399, which provides:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

Cal. Civ. Code § 3399.

Petersen-Dean does not explain the purported mistake, or how the Settlement Agreement fails to express the intention of the parties. As best as the court can tell, Petersen-Dean asserts that

1 Zurich led it to believe that Zurich would use the collateral funds to satisfy Petersen-Dean's
financial obligations under the Settlement Agreement or for future billings. James Petersen, Petersen-Dean's CEO, submits a declaration in which he states that he was involved in settlement negotiations with Zurich on November 1, 2016, and that "[b]ecause of Zurich's verbal reassurances about the fact that it would access the collateral if necessary, Petersen-Dean was under the impression that Zurich would draw down on the Collateral Account for future invoices." [Docket No. 163-1 (Petersen Decl., May 8, 2017) ¶ 6.] Notably, Petersen did not actually appear at the settlement conference held on November 1, 2016. *See* Reply 5-6. More importantly, the resulting Settlement Agreement, which was signed by Petersen, reflects no such agreement or understanding. Indeed, as set forth above, paragraph 5 makes clear that the collateral funds will *not* be used to pay for future billings, unless Petersen-Dean fails to pay those invoices and Zurich exercises its discretion to apply the collateral funds toward those unpaid billings. Moreover, the Settlement Agreement provides that it "sets forth the entire agreement between the Parties with respect to the payment terms and standstill described [therein]," and that "[n]either the Parties nor their agents have made promises or oral or written statements on the matters addressed in this Agreement other than those that appear within this Agreement." Settlement Agreement ¶ 10. In sum, this argument also fails.

Finally, Petersen-Dean argues that judgment is not warranted because Zurich does not and cannot assert that it has been damaged by Petersen-Dean's breach of the Settlement Agreement. According to Petersen-Dean, Zurich's own decision "to not access the collateral is the proximate cause of the damages it claims," and not any action by Petersen-Dean. Opp'n at ECF p. 14. It also argues that any claim for damages is not ripe, since Zurich can draw down on the collateral to fully cover the amounts it seeks. These arguments are without merit. The court has the authority to enforce the terms of the Settlement Agreement. Zurich has been damaged by Petersen-Dean's failure to make its settlement payments, and is entitled to entry of judgment pursuant to the terms of the Settlement Agreement. The collateral funds are irrelevant to the present dispute.

The court concludes that it is appropriate to enter judgment in Zurich's favor in the full requested amount of $1.4 million, which represents the total settlement amount of $1.8 million

minus the $400,000 in settlement payments made by Petersen-Dean to date.

## IV. CONCLUSION

For the foregoing reasons, the court grants Zurich's motion. The dismissal order is VACATED. Judgment in Zurich's favor is granted. Zurich shall submit a proposed judgment within seven days of the date of this order.

**IT IS SO ORDERED.**

Dated: June 30, 2017



Donna M. Ryu
United States Magistrate Judge

7